UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

BRET J. CHAPIN,

           Petitioner,

      v.                                          Case No. 07-C-186

MATTHEW J. FRANK,

           Respondent.

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Bret J. Chapin ("Chapin") is in custody pursuant to a state court judgment. On February 27, 2007, proceeding with the assistance of counsel, Chapin filed a petition for a writ of habeas corpus pursuant 28 U.S.C. § 2254. (Docket No. 1.) The Honorable William Griesbach screened Chapin's petition in accordance with Rule 4 of the Rules Governing Section 2254 Cases on March 1, 2007 and ordered the respondent to answer the petition. (Docket No. 2.) Upon all parties consenting to the full jurisdiction of a magistrate judge, on March 16, 2007, this case was reassigned to this court. (Docket No. 7.) On April 10, 2007, the respondent answered the petition. (Docket No. 10.) The pleadings on the petition are closed and the matter is ready for resolution.

**FACTS**

On July 24, 2003, Chapin was convicted of one count of battery to law officers or firefighters as an habitual criminal, in violation of Wisconsin Statutes §§ 939.61(1)(b) and 940.20(2). (Ans. Ex. A.) He was sentenced to one-year of initial confinement to be followed by two-years of extended supervision, to be served consecutively any previously imposed sentence.

(Ans. Ex. A.) The following relevant facts are contained in the court of appeals unpublished per curiam decision dated October 12, 2005:

> A police officer found Chapin asleep in a flower garden in front of a television and appliance store. The officer observed that Chapin was very intoxicated and had a bruised and swollen left eye and scrapes on both of his hands. Upon being woken up, Chapin was belligerent and used profanity. Chapin was taken into custody and transported to a hospital. While medical personnel attempted to examine Chapin, he became uncontrollable. While the officer tried to restrain him, Chapin kneed the officer in the head. The officer reported that a pillowcase was placed over Chapin's head because he began to spit blood at the officer. Chapin was charged with battery to a police officer.
>
> At trial Chapin was represented by Attorney Bridget Boyle. A voluntary intoxication defense was presented. Boyle cross-examined the police officer about the strong odor of alcohol emanating from Chapin, how long it took the officer to rouse Chapin from sleep, Chapin's inability to identify where he was by city or street, and the need to have Chapin medically evaluated to ascertain whether his level of intoxication would prevent the jail from accepting him. Chapin acknowledged understanding his right to testify and waived his right to testify. Following Chapin's waiver of his right to testify, Boyle stated on the record that her advice not to testify stemmed from the fact that Chapin would have to admit seven prior convictions and his testimony could possibly open the door to other acts evidence, including a prior claim of police brutality.
>
> Chapin filed a motion for postconviction relief alleging that he had been denied the effective assistance of trial counsel. Chapin's position was that he had been at a bar earlier in the evening but he had not been involved in a fight. He said that the police officer struck him in the eye with a flashlight. He suggested that the bartender and patrons would confirm that there had been no fight in the bar. Chapin testified at the <u>Machner</u> hearing that he tried to discuss with Boyle that he was the victim of police brutality. In addition to the bartender and bar patrons as potential witnesses, he suggested to Boyle that a young woman could testify that the same police officer hit her in the eye with his flashlight, that his probation agent would corroborate that there were not any scrapes on his hands, and that another police officer remarked that the injury to Chapin's eye was so perfectly round that it looked like an officer had beat him. He indicated he wanted to testify at trial but that Boyle had failed to contact witnesses to back him up. He also indicated that he and Boyle only spent a few minutes going over the PSI prior to sentencing. On cross-examination, he explained that he was never asleep in the flower garden at the television store but that the officer came upon him while he was smoking a cigarette at the side of the store. He stated that the officer hit him in the eye with a flashlight and struck him again at the hospital. He indicated that his knee rising to the officer's head was an involuntary action when the officer put a pillow over his head.
>
> The trial court found that what happened when the officer first encountered Chapin, whether or not he was in the flower garden, was not relevant to what happened

twenty minutes later at the hospital when Chapin kneed the officer in the head. The court recognized that if the officer struck Chapin, it might relate to Chapin's state of mind when subjected to physical restraint at the hospital. However, to suggest that Chapin had enough presence of mind to react to something that happened twenty minutes earlier was contrary to the intoxication defense. The court found that the critical issue of whether Chapin's conduct was intentional was tried to the jury. The court concluded that whether or not to investigate potential witnesses was a matter of trial strategy and that Chapin was not prejudiced because whether or not Chapin was involved in a fight before he was found in the flower garden was not relevant to what happened at the hospital. The court found incredible Chapin's testimony that the plea offer was not relayed to him, that Boyle only cursorily reviewed the PSI with him, and that he did not knowingly and voluntarily waive his right to testify. The motion for postconviction relief was denied [(Ans. Ex. B.)]

State v. Chapin, No. 2005AP15-CR, ¶¶2-5 (Wis. Ct. App. October 12, 2005) (footnotes omitted); (Ans. Ex. G). Chapin appealed, and the court of appeals affirmed his conviction on October 12, 2005. (Ans. Ex. G.) On February 27, 2006, the Wisconsin Supreme Court denied review. (Ans. Ex. J.)

**STANDARDS OF REVIEW**

Where the state court adjudicates the merits of a petitioner's claim, this court may grant habeas corpus relief if the state court decision:

> (1) was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

As the Supreme Court explained in Williams v. Taylor, § 2254(d)(1) establishes two independent grounds on which a federal court can grant habeas corpus relief: (1) if a state court decision is "contrary to" clearly established federal law, as determined by the Supreme Court, or (2) if a state court decision involves an "unreasonable application" of clearly established federal law, as determined by the Supreme Court. 529 U.S. 362, 404-05 (2000); see also Washington v. Smith, 219 F.3d 620, 627-28 (7th Cir.2000). The "contrary to" standard requires a state court decision to be "substantially different from the relevant precedent of [the Supreme Court]." Williams, 529 U.S. at

-3-

405.  For example, a state court decision applying a rule that contradicts the governing law set forth by the Supreme Court would qualify, as would a decision that involves a set of facts materially indistinguishable from a Supreme Court case that arrives at a different result.  Id. at 405-06.  By contrast, a state court decision that draws from Supreme Court precedent the correct legal rule and applies it in a factually distinguishable situation will not satisfy the "contrary to" standard, no matter how misguided the decision's ultimate conclusion.  Id. at 406-07.

Under the "unreasonable application" prong of (d)(1), relief may be granted if the petitioner shows that, despite identifying the correct rule of law, the state court unreasonably applied it to the facts of the case.  Williams, 529 U.S. at 404.  An unreasonable application of federal law, however, is different from the incorrect or erroneous application of federal law.  Boss v. Pierce, 263 F.3d 734, 739 (7th Cir. 2001) (citing Williams, 529 U.S. at 410).  A federal court simply disagreeing with the state court decision does not warrant habeas relief-the decision's application of Supreme Court precedent must be so erroneous as to be objectively unreasonable.  Middleton v. McNeil, 541 U.S. 433, 436 (2004); Yarborough v. Gentry, 540 U.S. 1, 5 (2003).

Under § 2254(d)(2), relief may be had where the petitioner demonstrates that the state court made an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Here again, an unreasonable determination is more than a determination that is simply incorrect or erroneous.  Moreover, state court factual determinations are presumed correct, and the petitioner has the burden of rebutting the presumption of correctness by "clear and convincing evidence." § 2254(e)(1). Rice v. Collins, 546 U.S. 333, 339 (2006) (citing Miller-El v. Dretke, 545 U.S. 231, 240 (2005)).

## ANALYSIS

Chapin does not articulate any specific grounds for relief in his petition other than alleging that he was denied the effective assistance of counsel; without setting forth any supporting facts, he simply alleges that the decisions of the state courts were "contrary to established United States Supreme Court law." (Docket No. 1.)

Therefore, the court turns to the grounds Chapin raised before the state courts: (1) he was denied the effective assistance of counsel because his counsel failed to investigate his case and communicate with him; (2) he was denied the effective assistance of counsel at trial when his attorney failed to call witnesses and admit exhibits; and (3) he was denied the effective assistance of counsel on appeal when his attorney failed to file a notice of appeal or a motion to modify sentence. (Ans. Ex. H.) The court shall address each of these in turn.

To prevail on an ineffective assistance of counsel claim, a petitioner must demonstrate that the Wisconsin court's decision was either contrary to, or based on an unreasonable application of, federal law. Williams v. Davis, 301 F.3d 625, 631 (7th Cir. 2002) (applying § 2254(d)(1) standards). The applicable federal law governing ineffective assistance claims is set forth in Strickland v. Washington, 466 U.S. 668 (1984). Strickland requires the petitioner to show: (1) his attorney's performance fell below an objective standard of reasonableness; and (2) the deficient performance caused him prejudice. 466 U.S. at 687-88 (1984); Roche v. Davis, 291 F.3d 473, 481-82 (7th Cir.2002); Montenegro v. United States, 248 F.3d 585, 590 (7th Cir. 2001). Courts review counsel's performance under the first prong deferentially, presuming reasonable judgment unless the factual record rebuts such a presumption. See Strickland, 466 U.S. at 689; Matheney v. Anderson, 253 F.3d 1025, 1039 (7th Cir.2001).

With regard to the prejudice element, the petitioner must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. See

Strickland, 466 U.S. at 689; Matheney, 253 F.3d at 1039-40. If the court finds that the counsel's alleged deficiency did not prejudice the defendant under the second prong, the court need not consider the first prong of the Strickland test. Berkey v. United States, 318 F.3d 768, 772 (7th Cir. 2003).

In denying Chapin's appeal, the court of appeals stated the following with respect to the merits of Chapin's claims:

> We first address Chapin's claim that trial counsel failed to investigate and present a theory of defense that the officer used excessive force against him. Chapin's specific complaints that trial counsel did not spend enough time consulting with him, did not interview potential witnesses, did not review medical records, did not present his booking photograph, and did not present the 911 tape all stem from his assertion that the officer struck him with a flashlight. A person may claim self-defense to a battery charge when an officer employs excessive force in making an arrest and the person counters with the use of reasonable force to protect himself or herself thereby injuring the officer. State v. Reinwand, 147 Wis. 2d 192, 201, 433 N.W.2d 27 (Ct. App. 1988). However, the self-defense privilege exists only for the physical protection of the defender and ends when the need for that protection disappears—that is, when the use of excessive force has ceased or abated. Id. at 201-02. Thus, trial counsel's assessment that proof that the officer struck Chapin with a flashlight was not relevant to what occurred at the hospital was sound. Twenty minutes elapsed and the excessive force that Chapin claims compelled his physical response was over. Nothing in the record suggests that such force was used against Chapin at the hospital so as to independently give rise to a privilege of self-defense. He was not prejudiced by trial counsel's failure to investigate or present self-defense.
>
> We also agree with the trial court's conclusion that as a matter of trial strategy, trial counsel decided not to assert self-defense. None of Chapin's proposed witnesses could give evidence about what happened between the time that Chapin left the bar and his first contact with the officer. Thus, asserting self-defense would have required Chapin's testimony since he was the only person to know that the officer struck him with a flashlight. Chapin would have had to admit seven prior convictions. Trial counsel also determined that Chapin's testimony would have opened the door to other acts evidence consisting of Chapin's prior violent behavior towards his parents and a previous claim of excessive police force. Chapin's testimony could also have been impeached by the 911 tape which indicated that a man, later identified to be Chapin, was observed lying in the flower garden. Chapin's credibility would have been damaged. "[A] particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments. The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." State v. Schultz, 148 Wis. 2d 370, 380, 435

-6-
Case 1:07-cv-00186-AEG   Filed 02/13/08   Page 6 of 8   Document 13

N.W.2d 305 (Ct. App. 1988) (quoting Strickland, 466 U.S. at 691), aff'd, 152 Wis. 2d 408, 448 N.W.2d 424 (1989).

More importantly, Chapin's testimony that he was coherently standing by the side of the television store would have been contrary to the voluntary intoxication defense. To negate the intentional act element of battery, the defense wanted to show the jury that Chapin was too intoxicated to know what was going on. A trial attorney may select a particular strategy from the available alternatives, and need not undermine the chosen strategy by presenting inconsistent alternatives. See Hubanks, 173 Wis. 2d at 28.

The trial court rejected as incredible Chapin's testimony that a plea offer was not conveyed to him, that he did not freely and voluntarily waive his right to testify, and that he did not get to read the PSI. These credibility determinations are not clearly erroneous. Trial counsel indicated that she discussed a possible plea with Chapin and, in fact, believed one of the goals was to get the battery reduced to a misdemeanor. In response Chapin was adamant that he was not guilty of the offense and would not accept the plea offer. At trial, an adequate colloquy was conducted demonstrating that Chapin understood his right to testify and waived it. At sentencing, corrections were made to the PSI by the defense. That demonstrates that the PSI was reviewed in detail with Chapin. There was no showing that trial counsel was ineffective with respect to conveyance of the plea offer, Chapin's waiver of the right to testify, or review of the PSI.

Chapin complains that trial counsel did not call a single witness at sentencing and that counsel only presented "limited argument." He does not establish what evidence was missing. Chapin failed to ask trial counsel about this aspect of her performance and, therefore, the issue is waived. See State v. Elm, 201 Wis. 2d 452, 463, 549 N.W.2d 471 (Ct. App. 1996).

Finally, Chapin argues that Boyle failed to undertake the requested appeal. Boyle filed a timely notice of intent to pursue postconviction relief under Wis. Stat. Rule 809.30(2)(b) (2003-04). She did not, however, proceed further. Chapin cannot establish that he was prejudiced by trial counsel's conduct in this regard since this appeal fulfills his right to seek postconviction relief and an appeal as of right under Rule 809.30.

(Ans. Ex. G at ¶¶8-13) (footnotes omitted).

The court has reviewed all the exhibits submitted by the respondent in this matter, particularly the pleadings Chapin submitted to the court of appeals, (Ans. Exs. D, F), the Wisconsin Supreme Court, (Ans. Ex. H), as well as the transcript of Chapin's motion hearing before the trial court, (Ans. Ex. C). In this review, the court has found no error in the decisions of the state courts denying Chapin's motion for post-conviction relief. The court finds the decision of the court of

appeals to be thorough and well-reasoned. Therefore, the court finds it unnecessary to further expand upon the court of appeals decision to resolve Chapin's petition. For the reasons set forth in the court of appeals' decision, the court concludes that Chapin has failed to demonstrate that he was denied the effective assistance of counsel and therefore, this court is unable to say that Chapin has met the substantially higher standard of showing that the decision of the state courts were contrary to, or involved an unreasonable application of the Strickland precedent or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

**IT IS THEREFORE ORDERED** that Chapin's petition for a writ of habeas corpus is **denied**. The clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 13th day of February, 2008.

s/AARON E. GOODSTEIN<br>
U.S. Magistrate Judge